HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN S. LANDREE, <br><br> Plaintiff, <br><br> v. <br><br> THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a foreign corporation; and SIMPSON HEALTH AND WELFARE PLAN, an employee welfare and benefit plan, <br><br> Defendants. | CASE NO. 3:10-CV-05353-RBL <br><br> ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Dkt.#17] |

THIS MATTER comes before the Court upon Defendants' Motion for Summary Judgment [Dkt. #17]. Plaintiff John Landree is a former employee of Simpson Tacoma Kraft (Simpson) who worked for nearly twenty years as a Shift Coordinator at Simpson's Tacoma plant. Landree participated in Simpson's Long Term Disability (LTD) insurance Plan (the Plan). Defendants Prudential Insurance Company of America and the Simpson Health & Welfare Plan (collectively Prudential) pay benefits under the Plan and also serve as the claim administrator. The Plan is governed by 29 U.S.C. § 1132, the Employee Retirement Income Security Act (ERISA).

After experiencing dizzy spells, Landree stopped working and applied for LTD under the Plan. Landree suffers from multiple ailments including type two diabetes, coronary artery

ORDER - 1

disease, and hypertension. Prudential evaluated and denied Landree's claim for LTD initially, and upon two appeals.

Landree brought this action under ERISA's civil enforcement provision, 29 U.S.C § 1132(a)(1)(B). The parties dispute the physical requirements of Landree's occupation, the extent of Landree's ailments, and the standard of review. Prudential seeks Summary Judgment, arguing the Court should review its decision under the deferential abuse of discretion standard because the plan contains a discretion clause. Prudential asks the Court to uphold its denial because substantial evidence supported Prudential's decision. Landree argues the Court should review the denial of benefits de novo because WAC 284-96-012 invalidates the Plan's discretion clause. He asks the Court to deny the Motion because there are genuine issues of material fact regarding Landree's regular occupation and alleged disability. For the reasons that follow, Defendants' Motion for Summary Judgment is DENIED.

## II. FACTS

### A. The Plan

The Plan purports to give Prudential "the sole discretion to interpret the terms of the Group contract, to make factual findings, and to determine eligibility for benefits. The decision of [Prudential] shall not be overturned unless arbitrary and capricious." (0345-46.)[1]

In relevant part, the LTD coverage section of the Plan reads as follows:

**How Does Prudential Define Disability?**
You are disabled when Prudential determines that:
- you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury* . . .

*Material and substantial duties* means duties that are:
- normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified . . .

---
[1] Numbered citations refer to either the Administrative Record (0001-0295) or Plan documents (0296-0353). [Dkt. #s 18 & 19, respectively.]

ORDER - 2

> *Regular occupation* means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location. (0323, emphases in original.)

**B. Prudential Denies Landree's Initial Claim for Long Term Disability**

    **1. Landree Applies for Long Term Disability**

On January 9, 2007, Landree saw his primary care physician, Dr. William Brand. Brand noted Landree was experiencing "right anterior pleuritic chest pain" and had "fatty infiltration of the liver." (0169.) Brand concluded Landree's systems were "otherwise negative" and that his type two diabetes mellitus and hypertension were controlled. Brand listed ten conditions Landree suffered from, including hypercholestolemia and "chronic low pain."

On January 20, Landree experienced two spells of dizziness at work and a coworker drove him home. (0167.) His wife wanted him to go the emergency room but he did not.

On January 26, Landree met with Dr. Theodore Lau, a Cardiac Health Specialist. Dr. Lau noted Landree had normal left ventricular systolic function, left ventricular diastolic dysfunction, mildly elevated systolic pulmonary artery pressure, and that there were "no significant changes" from an earlier study taken on March 10, 2006. (0174.) Dr. Lau administered an exercise test and concluded the "raw data was unremarkable." (0175.)

From February to April of 2007, Landree attended counseling sessions with Lem Stepherson, Ph.D. According to a one-sentence note from Stepherson, this counseling addressed Landree's anxiety related to the death of a co-worker, a heavy workload, and multiple health related conditions. (0134.)

On February 12, Landree saw Dr. John Rowlands for a pulmonary consultation. Rowlands concluded the test results were mostly negative. Rowlands opined Landree "also has problems with excessive daytime sleepiness in the midst of his shift work that involves rotating

ORDER - 3

12 hour shifts on a four day schedule where he works two days of days and two days of nights then has four days off. He obviously has significant problems with daytime hypersonolence in the midst of such occasionally." (0173.)

Landree stopped working on February 22, 2007, and saw Dr. Brand on February 26. Brand noted Landree "feels anxiety and stress to the point where he feels he cannot return to work pending his disability evaluation." (0164.)

On March 19, Landree saw Dr. Paul Darby, an occupational health specialist at the Franciscan Occupational Health Clinic in Tacoma. Darby opined Landree's "medical problems have been mounting lately and the shift work is throwing his diabetes out of control." (0094.) Darby made the following diagnoses: (1) Type 2 Diabetes mellitus (2) Recurrent near-syncope (3) Coronary artery disease (4) Hypertension (5) Paroxysmal atrial tachycardia (6) Dyslipidemia (7) Diverticulosis (8) Gastroesophagul reflux disease (9) Chronic back pain. Darby opined, "I have received all of his medical records and reviewed those . . . Patient is not medically fit for the essential job functions. He is restricted from shift work, working alone or remote from observation, work at unprotected heights, working with dangerous equipment, or wearing any respirator." (Id.)

**2. Prudential Evaluates and Denies Landree's Initial Claim**

On June 12, 2007, Prudential received Landree's claim for LTD. On that date, Dusti LaFlamme, a Claim Manager for Prudential, wrote the following on an internal note: "No eligibility issues. EE is [redacted] yr old shift coordinator TD since 2/23/07 due to type 2 diabetes mellitus, CAD, PAT and chronic back pain. EE reports dizzy spells and heart problems." (0197.)

On June 14, Michael Chretien, a Vocational Rehabilitation Counselor at Prudential, created a short report for Prudential to understand how Landree's job is normally done. Chretien

based his report on reference manuals. Chretien briefly described the job duties of a "Pulp Plant Supervisor" but did not classify the work as light, medium, or heavy. (0198.)

On July 25, LaFlamme and Landree had a telephone conversation. Landree explained his medical conditions and indicated his job requirements included shift work, being HAZMAT certified, using ladders and bending. (0216.) On July 26, LaFlamme met with Team Leader Linda Conley. At this meeting, Prudential classified Landree's occupation as "light." (0200.)

On August 6, 2007, Prudential decided to deny Landree's claim. On that day, Sandra Chapkovich, RN, did a "clinical review" of records from Dr. Brand, Dr. Darby, Dr. Lau, and Dr. Rowlands. The review consists of abbreviations and medical data not entirely understood by the Court. It appears Chapkovich looked at Landree's diagnoses and medical data and came to the conclusion Landree had no restrictions or limitations. (0201.) She closed the review by opining Landree "may have made a life choice to retire." (Id.) On the same day, Dr. Joyce Bachman affirmed Chapkovich's review in a brief note. Bachman opined, "[t]here is no contraindication for the claimant in doing shift work which he has been doing without incident." (0204.)

On August 13, 2007, Prudential denied Landree's claim in a letter written by LaFlamme. LaFlamme emphasized negative test results, lack of chest pain, and controlled hypertension and diabetes. The letter concluded, "[W]e find you are reasonably capable of performing an occupation requiring light work capacity duties." (0287-89.)

### C. Prudential Denies Landree's First Appeal

#### 1. Doctor Visits Before the First Appeal

On July 24, 2007, Landree saw a back specialist, Dr. Carlos Moravek. Moravek noted Landree's pain intensity measured two out of ten, his range of motion was reduced, and he was nontender to most touches. (0052.) Moravek recommended an MRI.

On September 24, Landree saw Dr. Rowlands again. Rowlands noted that Landree's pleuritic chest pain had resolved and that his daytime sleepiness and sense of well-being had improved as a result of his retirement. (0059.)

ORDER - 5

### 2. The Dispute Over Landree's "Regular Occupation"

On August 14, LaFlamme informed Landree over the phone that Prudential had denied his claim. During this conversation, Landree took issue with Prudential describing his work duties as light. (0217.)

On September 7, Marc Swan, a Vocational Specialist at Prudential, sent a message to LaFlamme. He opined Landree's job description "appears closer to the medium range," and the twelve hour shifts and passing the respiratory physical were "issues of concern." (0220-21.)

Apparently these issues were not of that much concern. On September 10, Conley, LaFlamme, and Swan held a meeting to discuss Landree's claim. An internal note reads, "Based on review of new information, our prior decision does not change . . . Regardless of whether the occ[upation] is light or medium, EE is not precluded from performing his occupation." (0207.)

Sometime before September 28, Landree obtained legal assistance from attorney Teri Rideout. Rideout commissioned Shervey & Associates to do an occupation analysis of Landree's position. This analysis concluded the position exceeded light work capacity duties. (0131.)

On October 25, Dr. Brand wrote a letter to Rideout after he reviewed the Shervey occupation analysis. Brand opined Landree "has multiple medical problems which could be adversely affected by working irregular shift hours, stress on the job, and variation in temperature and environment." (0060.) Brand thought Landree's coronary artery disease, diabetes, and blood pressure would be "negatively affected" if he continued working at Simpson. Brand also wrote, "I do not believe Mr. Landree should ever be placed in a situation where he would have to wear SCBA breathing apparatus in a stressful rescue situation." (Id.)

On December 7, Rideout wrote a letter to Prudential. (0120.) Rideout emphasized that an MRI from 7/26/07 revealed spinal damage and reemphasized the recommendations of Dr. Darby and Dr. Brand. The letter enclosed the Shervey occupation analysis and MRI results.

Prudential responded to this letter with an appropriate step. On December 18, Angela Holland, an Appeals Specialist, ordered a Labor Market Survey to investigate whether 12 hour irregular shifts, respirator use, and Hazmat suits were a normal part of Landree's regular occupation. (0208.)

### 3. Dr. Syrjamaki's Review and Denial of Landree's First Appeal

On December 19, Prudential decided to bolster its decision with an external review. On that day, Holland wrote to a Southfield, Michigan company called Qualified Medical Examiners. She requested a specialist in occupational medicine conduct an "expedited handling" of an independent file review. (0284-85.) A specialist in internal medicine, Dr. Charles Syrjamaki, handled this request.

Syrjamaki dutifully conducted a file review for Prudential on December 27, 2007.[2] Syrjamaki reviewed medical records from Doctors Brand, Darby, Lau, and Rowlands as well as the one page note from the psychologist Lem Stepherson. Syrjamaki also reviewed the Shervey occupation analysis and letters from Landree and Rideout. Syrjamaki talked with Dr. Brand on the telephone and concluded from that conversation and other records that "the precipitating event for Mr. Landry [sic] going off work . . . was some anxiety and stress, which was situational at the time." (0050.)

Syrjamaki opined that none of Landree's individual conditions prevented him from working:

---

[2] The Court notes that the review was completed the same day Syrjamaki received the request. (0044.)

ORDER - 7

> In reviewing the medical records, Mr. Landree does not appear to be disabled from his job as a shift coordinator for Simpson Tacoma Kraft Company. Although he is 59 years of age and was moderately overweight, his job did not have significant physical demands that he could not do. It also appeared that although he did have significant medical disorders, these were stable and under good control. His diabetes mellitus appeared to be under good control by diet and oral medications. He had one episode of dizziness and near syncope but had a negative evaluation for this and had no recurrence. He did not have any significant coronary artery disease. His hypertension was under good control, and his degenerative arthritis and degenerative disk disease was no more than one would expect for a man his age. He had done the same job for 33 years, and although he was a shift coordinator, this was not a new job for him, and the notion that he was too ill to do shift work was not borne out by the medical records. (0050-51.)

Prudential paid Syrjamaki $1,625 for the 6.5 hours of work necessary for the file review. (0114.) Based on this review, Holland thought it unnecessary to wait for the results of the Labor Market Survey she ordered on December 18. (0209.) Holland upheld the decision to disallow benefits.

On January 9, 2008, Holland informed Rideout of the appeal decision in a letter. Holland emphasized that Landree left work due to "situational anxiety." (0282.) The letter quotes extensively from Syrjamaki's review and concluded "the medical evidence does not support any restrictions or limitation." (Id.)

**D. Prudential Denies Landree's Second and Final Appeal**

On January 23, 2008, Linda Geis, Director at Vocational Directions LLC, completed the Labor Market Survey for Prudential that Holland had ordered on December 18. Of four Pulp Plants that had a Supervisor position, two reported using hazmat suits and irregular shift patterns like those used at Simpson. (0108-11.) Holland did not think this had any impact on her decision to deny the first appeal. (0210.)

On March 11, Jim Burg, a Simpson Human Resources Manager, sent a letter and description of Landree's position to Rideout. Burg emphasized the physical demands of the job

and the fact that it was stressful. He explained the importance of Landree being on the Emergency Response Team, and that in 2007 a Simpson doctor would not approve Landree for continued employment because he could not pass the required physical. Burg opined that in his 43 years of Human Resources Management he could not recall an employee being more eligible for Long Term Disability benefits. (0069.)

On April 25, Dr. Brand sent a letter to Rideout. Brand wrote "stress and anxiety" were a "contributing factor" to Landree's difficulty at work, but went on to emphasize his other diagnoses. (0041.) Brand believed it would be "unconscionable" for Landree to go back to work because of the high probability of a heart attack.

Rideout forwarded this information to Prudential along with a letter arguing Syrjamaki was ignoring recommendations of other doctors and Simpson. (0065.) In response, Holland decided the best course of action would be to have Syrjamaki conduct another review in light of the newly received opinions of Dr. Brand and Jim Burg. (0211.)

On June 17, Syrjamaki completed his second review, this time considering the letters from Brand and Burg, as well as the Labor Market Survey. Syrjamaki believed it was "unclear why Dr. Darby would not pass Mr. Landree on the physical examination, as it appeared that the coronary artery disease was minimal and insignificant, that the Type 2 diabetes mellitus was under good control, the cardiac arrhythmia (paroxysmal atrial tachycardia) was controlled, hypertension was controlled, and his pulmonary function tests were normal." (0023.) Syrjamaki opined that long-term risk factors do not provide a reason for why an individual cannot do a job. Syrjamaki did not mention the requirement of wearing a SCBA device or the work classification. Prudential paid Syrjamaki $875 for the 3.5 hours needed to complete this second review. (0005.)

On July 10, 2008, Marc Swan, the Vocational Specialist at Prudential opined that Landree's position "would best be described as a heavy strength demand occ[upation]." (0213.) The same day, Prudential sent Rideout a letter informing her that Landree's second appeal had been denied. (0270-74.) The letter quotes extensively from Syrjamaki's second review. The letter concedes Landree's job falls into the "heavy to very heavy" category, but concludes that "in absence of any medically supported restrictions or limitations, we still conclude that Mr. Landree has the functional capacity to perform the material and substantial duties of his regular occupation." (0272.)

His administrative remedies exhausted, Landree filed a Complaint on May 20, 2010 seeking LTD benefits, removal of Prudential as Plan fiduciary, and attorney's fees. Prudential filed this Motion for Summary Judgment on February 4, 2011.

## III. DISCUSSION

**1. The Standard of Review Is De Novo Because WAC 284-96-012 Prohibits Discretionary Language In Insurance Plans And ERISA Does Not Preempt WAC 284-96-012.**

Prudential argues the Court should review its denial of LTD benefits under the abuse of discretion standard, because the language of the Plan grants Prudential discretion. Landree argues the Court should review Prudential's decision de novo because WAC 284-96-012 voids the discretionary language in the Plan.[3]

On September 5, 2009, Washington State amended its insurance code with WAC 284-96-012, titled Discretionary Clauses Prohibited (the Regulation). The Regulation prohibits the type of discretionary language found in the Plan:

---

[3] Prudential did not file a Reply.

(1) No disability insurance policy may contain a discretionary clause. "Discretionary clause" means a provision that purports to reserve discretion to an insurer, its agents, officers, employees, or designees in interpreting the terms of a policy or deciding eligibility for benefits, or requires deference to such interpretations or decisions, including a provision that provides for any of the following results:

    (b) That the insurer's decision regarding eligibility . . . is binding;

    (c) That the insurer's decision to deny . . .benefits, is binding;

    (f) That the standard of review of an insurer's interpretation of the policy or claim decision is other than a de novo review.

Normally, ERISA preempts any and all state laws insofar as they relate to any employee benefit plan. 29 U.S.C. § 1144(a). However, the so-called savings clause saves from preemption "any law of any state which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). To be protected by the savings clause, a state law must (1) be specifically directed toward entities engaged in insurance, and (2) must substantially affect the risk pooling arrangement between the insurer and the insured." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003). In *Standard Ins. Co. v. Morrison*, 584 F.3d 837 (9th Cir. 2009), the Ninth Circuit ruled a Montana code provision allowing the state insurance commissioner to disapprove of insurance contracts fell within the savings clause, and that the commissioner could disapprove of discretionary clauses.

No Washington State court has construed the Regulation. On February 10, 2011, in a case of first impression, Robert S. Lasnik, U.S. District Court Judge for the Western District of Washington, ruled ERISA did not preempt WAC 284-96-012 because the Regulation satisfied the two-pronged test laid out in *Kentucky Ass'n*. *See* No. C10-484 RSL, *Murray v. Kane*, at *5 (W.D. Wash, Feb. 10, 2011).

In this Court's view, Judge Lasnik's decision is correct. ERISA does not preempt the Regulation because the Regulation satisfies the two-part test laid out in *Kentucky Ass'n*. The first prong is satisfied because the regulation is directed at entities engaged in insurance. "ERISA plans are a form of insurance" *Morrison* 584 F.3d at 842, and the Regulation controls the terms insurance companies can place in their policies.

The second prong is satisfied because the prohibition on discretionary clauses will affect the risk-pooling arrangement between insurers and the insured in two ways. First, the Regulation "alters the scope of permissible bargains between insurers and insured." *Am. Council of Life Ins. v. Ross*, 558 F.3d 600, 606 (6th Cir. 2009). Second, "removing the deferential standard of review from insurers will likely "lead to a greater number of claims being paid. More losses will thus be covered, increasing the benefit of risk pooling for consumers." *Murray* at \*4 (quoting *Morrison*, 584 F.3d at 845). Thus, the Regulation is saved from preemption.

Because it is not preempted, the Regulation invalidates the discretionary language in the Plan. The Plan gives Prudential "sole discretion . . . to determine eligibility" and provides that "[t]he decision of [Prudential] shall not be overturned unless arbitrary or capricious." (0345-46.) The Regulation voids this language because the language "purports to reserve discretion to" Prudential and provides that that the standard of review for Prudential's decision is something "other than a de novo review." WAC 284-96-012.

Once the discretionary language is invalidated, the standard of review becomes de novo. *See Seattle-First Nat'l Bank v. Win. Ins. Guaranty Assoc.*, 94 Wn. App. 744, 753 (1999) ("Contracts for insurance must comply with statutes. Non-compliant contract

provisions will not invalidate the contract; rather, we construe such provision to comply with statutes. RCW 48.18.510."). A denial of benefits is to be reviewed under a de novo standard unless the benefit plan gives the administrator discretionary authority. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Once the discretionary language is removed from the Plan, under *Firestone*, the standard becomes de novo.

2. **Under De Novo Review, Defendants' Motion for Summary Judgment Is DENIED Because There Are Genuine Issues Of Material Fact With Respect To Landree's Regular Occupation And His Disability.**

Prudential argues Landree's "medical records simply do not support a finding that he was disabled from his own occupation." (Mot. at 18.) Landree argues Prudential ignored both the physical demands of the Shift Coordinator position and reliable evidence demonstrating Landree's disability. (Pl.'s Opp. at 9 & 12.)

"[W]hen the court reviews a plan administrator's decision under the de novo standard of review, the burden of proof is placed on the claimant." *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir 2010). "A de novo review "'gives no deference at all' to the decisions of insurers to deny benefits." *Schwartz v. Metro Life Ins. Co.*, 463 F.Supp.2d 971, 982 (D. Ariz. 2006) (quoting *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 n. 2 (9th Cir. 1999)).

Summary judgment is appropriate when the record shows there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### A. There is a genuine factual dispute over Landree's regular occupation.

There are genuine issues of material fact with respect to Landree's "regular occupation." Over the course of this dispute, Prudential referred to Landree's duties as light (0288), medium (0220), and heavy (0213). The Shervey Analysis suggests the Shift Coordinator walks for 80% of the day and lifts objects up to 50 lbs. (0128.) Additionally, Landree worked twelve-hour irregular shifts. Nothing in the record refutes any of this. A reasonable fact finder could classify the physical demands of Landree's regular occupation as heavy.

Based on the administrative record, a reasonable fact finder could conclude it was not possible for Landree's duties to be "reasonably omitted or modified." For example, the Shervey analysis found using a SCBA was a "*requirement*" (0133) and the Human Resources Manager at Simpson wrote "Mr. Landree was not able to pass the respiratory physical *required* for the HAZMAT portion of his job." (0070, emphases added.) Prudential's Labor Market Survey indicated respirators and HAZMAT suits were used for Landree's position. (0036.) A reasonable fact finder might conclude from this evidence that Landree's position could not be modified.

### B. There is a genuine factual dispute over Landree's disability.

The Court finds itself observing dueling experts. Doctors Brand and Darby come out of Landree's corner, and Dr. Syrjamaki and Sandra Chapkovich fight it out for Prudential. Landree argues he was not able to perform the duties of his position because of his multiple diagnoses. (Pl.'s Opp. at 9.) Prudential argues it "had a reasonable basis for determining Plaintiff was not impaired from performing his material and essential job duties." (Mot. at 15.) Although Prudential manages to score some points, it fails to deliver the knockout punch Summary Judgment requires.

Prudential's decision to deny Landree's claim had a substantial basis in objective medical data. The Chapkovich decision emphasized the abundance of negative test results. (0201.) Dr. Syrjamaki persuasively opined Landree's diabetes, hypertension, and coronary artery disease were all under control. (0050.) The notes from Doctors Lau (0174) and Rowlands (0172-73) indicate Landree faced no imminent health threats. Thus, a reasonable fact finder might come to

the conclusion that Landree could have continued to perform his material and essential duties when he stopped working.

A reasonable fact finder could also come to an opposite conclusion. A fact finder might wonder why Prudential paid $2,500 for a paper review of Landree when the Plan explicitly allowed them to conduct an in-person examination. (0287.) Dr. Syrjamaki deftly addressed the lack of danger regarding each individual condition suffered by Landree but provided no opinion as to their combined effect upon Landree. (See 0044-50.) Both Syrjamaki and Chapkovich place great weight on Landree's "situational" stress, and dismiss his dizzy spells as non-recurrent. (Id; 0201.) Both Chapkovich and Syrjamaki's reviews appear rushed. Neither Syrjamaki nor Chapkovich seriously considered Landree's duties might be classified as heavy. Neither Syrjamaki nor Chapkovich specialize in occupational medicine. Thus, while based in part on objective medical data, the opinions of Prudential's experts are suspect in some respects. Based upon the administrative record, a fact finder could reasonably conclude Landree was unable to perform the material and essential duties of his regular occupation when he stopped working.

## CONCLUSION

ERISA does not preempt WAC 284-96-012 because the Regulation falls within ERISA's savings clause. Accordingly, the Court conducted a non-deferential review of the administrative record and has concluded there are genuine issues of material fact. Therefore, Defendants' Motion for Summary Judgment [Dkt. # 17] is DENIED.

Landree and Prudential should schedule a one-day bench trial based solely on the administrative record. The parties will focus their presentations on the physical requirements of

//
//
//
//
//

Landree's occupation, the extent of his alleged disabilities in 2007, and the credibility of medical experts involved in this dispute.

**IT IS SO ORDERED.**

Dated this 13th day of June, 2011.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE